## TALLEY v. ATLANTIC & BIRMINGHAM RAILWAY CO.

The facts in this case were sufficient to carry to the jury the question of negligence chargeable to the defendant, which it is alleged resulted in the injury to the plaintiff. The evidence concerning the plaintiff's conduct at the time of the injury was not such as to authorize the court as a matter of law to hold that his negligence or want of care would defeat a recovery. It was, therefore, erroneous for the court to direct a verdict for the defendant.

Submitted March 3,—Decided July 30, 1906.

Action for damages. Before Judge Reynolds. City court of Waycross. June 13, 1905.

The plaintiff was injured by a train, and brought suit against the railway company for the damages sustained. On the trial the evidence showed that the plaintiff was employed as a brakeman on a freight-train of the defendant company, and that on the morning of the injury his train was standing on the main-line of the track in a certain village waiting to meet the passenger-train, which was to take the side-track at the switch just ahead of the freight-engine. The plaintiff was sent to set the switch for, and flag, the passenger-train. After setting the switch, and while waiting for the arrival of the passenger-train which he saw approaching from a distance, he occupied himself by way of a pastime with stooping over the track and sighting down the rails to see if they were in aligment. While he was thus stooping over one of the rails, "lining the track," according to his testimony, he was seized with a sort of cramp or paralytic stroke, and fell with his arm and head on the rail and his body lying outside of the track. He was conscious of his surroundings, but was unable to move his body or call for help. He knew that he was subject to these cramps when overheated. In this condition he was run over by the approaching train. The defendant, after introducing considerable evidence to show that the plaintiff was injured in consequence of his having fallen asleep on the track, sought to prove that the servants of the company were guilty of no negligence in regard to the injury. The evidence on this point was as follows: Both the engineer and fireman of the passenger-train, when they were a quarter of a mile away, saw the freight-train standing on the main line, and the red target of the switch, which stood 15 feet above the ground, turned towards them. Both knew that this meant that their train should "head in" at the switch,

and that a flagman should be in the vicinity of the switch for the purpose of flagging the train. As they approached the switch both were on the lookout. The fireman was not looking particularly for the plaintiff, but was watching the switch, and, being on the opposite side of the track from the plaintiff and on the outside of the curve which the road made at this point, he did not see the plaintiff until the engine struck him. The engineer was in a better position to observe the track, but on account of the prone position of the plaintiff's body, as well as the grass growing around and concealing it, he did not see the plaintiff until within 100 feet. The first that directed his attention to him was seeing something on the rail. His engine was then running about 20 miles an hour. He did all that was possible to stop, but succeeded only in slowing down to about 4 or 5 miles an hour at the time of striking the plaintiff.

Upon this state of facts the court directed a verdict for the defendant, the plaintiff excepting.

*Hardeman & Jones* and *Leon A. Wilson,* for plaintiff.

*Rosser & Brandon* and *J. L. Sweat,* for defendant.

ATKINSON, J. From the evidence it appears that the engineer, being able to see the freight-train and switch at some distance from them, was fully aware that his train was to take the side-track at the switch, and that a flagman should be in the neighborhood of the switch to warn him that it was open. It would, therefore, seem that he should have been particularly on the lookout for such a person. In spite of this, according to his own testimony, he approached the switch at the rate of 20 miles an hour, and did not see the flagman lying across the rail until within 100 feet, when it was too late to stop. He testified that the flagman was 250 yards from the switch; and that there was nothing to obstruct his view, except the grass, which, he said, concealed the body of the man. The questions then arise, whether, under these circumstances, ordinary prudence would require that the servants in charge of the train should have run at a lower rate of speed, or should have scanned the track more closely with a view of ascertaining the whereabouts of the flagman. Under these circumstances, it could not be held as a matter of law that the servants of the defendant, engaged in the operation of the cars and other machinery, were in the exercise of all ordinary and reasonable care and diligence at the time of the commission of the injury. The question of negligence should have

been submitted to the jury, and it was erroneous for the court, upon the theory of no negligence being shown which was chargeable to the defendant, to direct a verdict in its favor. Nor was the court authorized to direct a verdict for the defendant on the theory that the plaintiff's negligence caused or contributed to the injury, or that the plaintiff, by the exercise of ordinary care, could have avoided the result of the defendant's negligence. These presented questions for determination by the jury, just as negligence is a question for the jury when it is sought to be charged upon the defendant. The plaintiff's testimony as to the circumstances under which he was injured was sufficient, upon the standpoint of his own conduct, to carry the question to the jury.

*Judgment reversed. All the Justices concur, except Fish, C J., absent.*